UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MICHAEL T. KING, | ) |
| Plaintiff, | ) |
| v. | ) CV423-120 |
| SHERIFF WILCHER, *et al.*, | ) |
| Defendants. | ) |

# ORDER

*Pro se* plaintiff Michael T. King filed this 42 U.S.C. § 1983 case alleging that he is subjected to unconstitutional conditions of confinement as a pretrial detainee at Chatham County Detention Center. *See generally* doc. 1. The Court granted him leave to proceed *in forma pauperis*, doc. 4, and he returned the required forms, docs. 7 & 10. He has also filed a Motion to Appoint Counsel. Doc. 9. For the reasons explained below, that Motion is **DENIED**. Doc. 9. Upon screening King's Complaint, pursuant to 28 U.S.C. § 1915A, his Complaint is **DISMISSED**, in part, but he shall have an opportunity to amend.

1

I. **Motion to Appoint Counsel**

King's Motion to Appoint Counsel states that he is unable to afford retained counsel and that his incarceration will limit his ability to litigate his case, and that he has "diminished mental and physical capacity." *See* doc. 9 at 1-2. His Motion also includes vague allegations of misconduct by jail staff "since Dec[.] 5, 2021." *Id.* at 2. The Court notes that none of that misconduct is alleged in King's Complaint.[1] *Compare id.* at 2, 5,

---

[1] There is no suggestion in King's filings that the allegations of misconduct were inadvertently omitted from the claims asserted in his Complaint. There is also no suggestion that King wishes to amend his Complaint to add those allegations. As the Eleventh Circuit has repeatedly stated, the "leniency [afforded to *pro se* pleadings] does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order sustain an action." *Peers v. Brown*, 2023 WL 3613667, at *2 (11th Cir. May 24, 2023) (internal quotation marks and citation omitted)). The Court, therefore, does not consider those allegations in the screening conducted below.

King has also filed two "declarations" including additional allegations. *See* docs. 11 & 12. For the same reasons explained above, the Court has not considered those allegations in its analysis below. Those submissions require additional comment because King submitted packages of what appears to be perishable food with those declarations. *See* docs. 11-1 & 12-1. King is advised that such submissions are improper. His allegations do not require evidentiary support and, even if they did, mailing perishable items to the Clerk's Office without specific direction from the Court is unnecessary and improper. *See, e.g.,* S.D. Ga. L. Civ. R. 26.4 (making parties and their counsel "custodian[s]" of discovery material); 79.4 (discussing "exhibits received or offered into evidence at any *trial or hearing* . . ." (emphasis added)). King is **DIRECTED** to limit his submissions to the Clerk to written or documentary materials. If he believes that he has other material that is properly filed with the Clerk, he is **DIRECTED** to move for the Court's leave to file that material **before** submitting it to the Clerk. **King is advised that any future submission of any non-documentary materials to the Clerk without prior authorization from the Court will be deemed failure to obey the Court's Order, subjecting his case to dismissal pursuant to Federal Rule 41(b).**

*with* doc. 1 at 5-6. None of the circumstances presented in his Motion merit court-appointed counsel.

King has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "[T]his Court has repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021). General

lack of education, including legal education, is also not a sufficient basis to require appointment of counsel. *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021). Finally, conclusory allegations of mental illness do not require appointment of counsel. *See, e.g., Kidwell v. Wagoner*, 2011 WL 13175897, at *1 (M.D. Fla. Feb. 11, 2011).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). King's pleadings appear to adequately present his position, even if, as explained below, it ultimately lacks merit. There is, therefore, no indication of any "exceptional circumstance" that warrants appointment of counsel. *Fowler*, 899 F.2d at 1096. His request for court-appointed counsel is, therefore, **DENIED**. Doc. 9.

## II.   Screening

Under the Prison Litigation Reform Act (PLRA), a federal court is required to conduct an initial screening of all prisoner complaints. 28

U.S.C. § 1915A(b). In conducting the review, the Court must identify all "cognizable claims" and dismiss the complaint, or any portion thereof, that is "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* The complaints of unrepresented parties are held to a less stringent standard than those drafted by an attorney and are afforded a liberal construction, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers (internal quotations omitted)); however, they must still comply with procedural requirements, *McNeil v. United States*, 508 U.S. 106, 113 (1993).

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff . . . must plead facts sufficient to show that [his] claim has substantive plausibility" and to inform the defendant of "the factual basis" for the complaint. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In its review, the Court also applies the Federal Rule of Civil Procedure 12(b)(6) standard, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001), accepting all allegations as true and construing them in the light most favorable to the plaintiff, *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Before considering the merits of King's factual allegations, the Court must address his attempt to name the Chatham County Detention Center as a defendant. *See* doc. 1 at 2. As this Court has repeatedly explained, "the Chatham County Detention Center is not an entity subject to suit." *Meyers v. Chatham Cnty. Det. Ctr.*, 2022 WL 1215640, at *1 (S.D. Ga. Apr. 25, 2022). Chatham County Detention Center is, therefore, **DISMISSED**.

King's Complaint alleges that he is a pretrial detainee at Chatham County Detention Center. *See* doc. 1 at 4. He contends that, as such, he is "constitutionally entitled to access to law library in jail, each day for 8 hrs.[,] a personal TV, medical care equal to what non-convicted prisoners have outside jail,[2] unlimited, unrestricted phone calls, mail[,] and

---

[2] It is unclear who could be a "non-convicted prisoner . . . outside jail." The Court

visits." *Id*. at 5. He alleges that prohibition on pre-conviction punishment requires he have "the same rights as if he were on house arrest." *Id*. He does not allege, but the Court might charitably infer, that those amenities are not available to him. *See id*. at 5-6. In addition to his general complaints about the conditions of his pre-trial confinement, King assert a more specific problem with the legal resources available to him. He alleges that he is refused "access to a fully stocked up to date law library and research assistance equal to that available to the prosecutor and / or general public." *Id*. at 5. As a result of the conditions, he contends that he suffers from "Stockholm Syndrome [and] post-traumatic-stress disorder." *Id*. at 7. He seeks monetary damages, calculated at "$1,500 [per] day for each day since 12-05-21 and $450,000 pain and suffering." *Id*. at 7.

King's understanding of the rights enjoyed by pretrial detainees, upon which his general complaints about the conditions of his confinement rest, is simply mistaken. "The Constitution does not mandate comfortable prisons, but the Eighth and Fourteenth

---

infers that King contends that pretrial detainees are constitutionally entitled to medical care equal to what is available to the general public.

7

Amendments guarantee that prisoners and pretrial detainees will not be deprived of the minimal civilized measure of life's necessities." *Groover v. Israel*, 684 F. App'x 782, 785-86 (11th Cir. 2017) (internal quotation marks and alterations omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The constitutional requirement of access to legal resources is discussed more fully below, but the remining conditions implicated by King's allegations do not approach the extreme deprivations that implicate even a pre-trail detainee's constitutional rights. "Inmates do not have a constitutional right to watch television," *Barr v. Gwinnett Cnty.*, 2012 WL 7828968, at *3 (N.D. Ga. Dec. 4, 2012) (collecting cases), much less any right to "a personal TV." The standard for constitutionally required medical care for inmates is identical for pretrial detainees and convicted prisoners. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007); *Thomas v. Bradshaw,* 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022). Far from requiring "care equal to what non-convicted prisoners have outside jail," the Constitution "does not require medical care to be perfect, the best obtainable, or even very good," *Gomez v. Lister*, 2022 WL 16776248, at *3 (11th Cir. Nov. 8, 2022) (internal quotation marks, alterations, and citations omitted); even care

8

that amounts to medical malpractice does not violate the Constitution, *see, e.g., Wade v. McDade*, ___ F.4th ___, 2023 WL 3574362, at *9 (11th Cir. May 22, 2023) ("[I]t is axiomatic that simple medical malpractice does not rise to the level of a constitutional violation."). Although pretrial detainees have rights to "reasonable" access to visitors and phones, "[i]n general, unlimited communication between pretrial detainees and their family and friends is not required" by the Constitution. *See Dailey v. Aramark Food Enters.*, 2012 WL 2402836, at *3 (N.D. Fla. May 23, 2012). Finally, "[a]s a general matter, prisoners have the right to both send and receive mail," but reasonable restrictions on that right are permissible. *See, e.g., Evans v. Slagle*, 2023 WL 3689994, at *3 (W.D.N.C. May 26, 2023). Even assuming, then, that King alleges that he is not provided with "a personal TV, medical care equal to what non-convicted prisoners have outside jail, [and] unlimited, unrestricted phone calls, mail[,] and visits," those allegations are insufficient to allege that his constitutional rights have been violated.

King's more general claim that "[i]t is well established is law that a pre-trial detainee can not be subjected to any type of punishment in any form . . . and is entitled to the same rights as if he were on house arrest,"

9

is closer to correct, but still overstated. The Eleventh Circuit has held that "[d]ue process requires that a pretrial detainee not be punished prior to lawful conviction." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "However, the government may detain individuals to ensure their presence at trial and may subject them to the conditions and restrictions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Id.* There is simply no fact alleged in the Complaint that would support the inference that any of the conditions vaguely implicated was punitive. Those allegations, therefore, also fail to state any claim.

Beyond King's mistaken summary of the scope of pre-trial detainee's rights, the only actual conduct alleged in his Complaint is that he is not provided sufficient access to legal materials. King alleges that the "Sheriff's punishment of refusing to make available to him access to a fully stocked up to date law library and research assistance equal to that available to the prosecutor and / or general public," amounts to improper pre-conviction punishment. Doc. 1 at 5. He also suggests, albeit in a vague and conclusory fashion, that he is unable "to assist his counsel[o]r or to represented himself . . . ." *Id.*

10

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)).  However, there is no "abstract, freestanding right to a law library or legal assistance . . . ." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Thus, "'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.' [Cit.]  Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998) (quoting *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).  King's vague suggestion that his ability "to assist his counsel[o]r or to represent himself," is not sufficient to support an access-to-courts claim, but the claim might be amendable.

Despite King's failure to plead a viable claim, "when a more carefully drafted complaint might state a claim, a district court should

11

give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). King is, therefore, **DIRECTED** to submit an Amended Complaint addressing the deficiencies in his claims, discussed above, no later than June 23, 2023. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). King is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). King is further advised that failure to timely submit his amended complaint may result in a recommendation that this case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Finally, it is time for plaintiff to pay his filing fee. Based on the financial information available, it appears that King has no funds available. *See* doc. 10. He, therefore, does not owe any initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's

custodian (or designee) shall further set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.  In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian.  The balance due from plaintiff shall be collected by the custodian at all future facilities in accordance with the terms of this Order.

**SO ORDERED**, this 2nd day of June, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA